**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| BRANDON TYLER HORNER, | * | |
| Plaintiff | * | |
| v | * | Civil Action No. ELH-14-1514 |
| WARDEN DAYENA CORCORAN, et al., | * | |
| Defendants | * | |
| | *** | |

**MEMORANDUM**

Self-represented plaintiff Brandon Tyler Horner, a Maryland prisoner currently incarcerated at Eastern Correctional Institution ("ECI"), filed a civil rights suit against several defendants: Warden Dayena Corcoran; Captain Robert Dean; Lt. George Harrison II; Captain Shanea Ross; Lt. Anthony Gray; and Domingo Geruso. ECF No. 1.[1] In sum, plaintiff alleges that defendants failed to protect him from a sexual assault committed by another inmate. Defendants have moved to dismiss or, in the alternative, for summary judgment. ECF No. 14 (the "Motion").[2] The Motion is supported by many exhibits. Plaintiff has not filed a response.[3]

---

[1] The Clerk shall amend the docket to reflect the full and correct spellings of defendants' names.

[2] All citations are to the court's electronic docket.

[3] Pursuant to the dictates of *Roseboro v. Garrison*, 528 F.2d 309, 310 (4th Cir. 1975), on November 25, 2015, plaintiff was notified that defendants had filed a dispositive motion, the granting of which could result in the dismissal of his action. ECF No. 15. Plaintiff was also informed that he was entitled to file materials in opposition to that motion and that his failure to file a timely or responsive pleading or to illustrate, by affidavit or the like, a genuine dispute of material fact, could result in the dismissal of his case or in the entry of summary judgment, without further notice of the court. *Id.*

No hearing in necessary to resolve the Motion. *See* Local Rule 105.6 (D. Md. 2014). For the reasons that follow, defendants' Motion, construed as a motion for summary judgment, shall be granted.

**Factual Background**

Plaintiff alleges that while he was housed at the Maryland Correctional Institution-Jessup ("MCI-J"), he was placed into a cell with a "'B.G.F.' gang member" and beaten and threatened. Horner states that he asked defendants to move him from the cell but was told to "deal with it." ECF No. 1 at 4. According to Horner, he was subsequently raped by his cellmate on December 30, 2013. *Id.* Plaintiff reported the assault on that date. *See* ECF 14-3 at 6. Horner was promptly evaluated and treated at Mercy Medical Center, a hospital in Baltimore, ECF 14-3 at 7.

Horner attached to his complaint an administrative remedy request ("ARP") dated January 1, 2014, submitted while Horner was housed at MCI-J. ECF 1-1. In the ARP, Horner asked to be moved to a different facility and indicated he was raped on December 30, 2013. Horner stated in the ARP that he was in fear for his life because of his having pressed charges against his assailant. *Id.* And, he sought the firing of the classification person who placed Horner in the cell with his assailant. *Id.*

Defendants do not dispute that plaintiff was raped by his cellmate while housed at MCI-J. They dispute, however, that any correctional employee was aware of a risk of harm to Horner's safety prior to the incident. *See generally* ECF No. 14-1 (Memorandum of Law).

In support of their Motion, defendants indicate that plaintiff was admitted to the State prison system on December 10, 2013 (ECF 14-2 at 31), and was transferred to MCI-J on the morning of December 30, 2013, just a few hours before the sexual assault. *Id.* at 46. In particular, at 9:20 a.m. on December 30, 2013, Horner was received into MCI-J from the

Maryland Reception Diagnostic and Classification Center ("MRDCC") and assigned to FW-245 with cellmate Bruce[4] McDougald. ECF No. 14-2 at 17, 31. Both Horner and McDougald were classified as medium security inmates. *Id*. at 6. McDougald is serving a nine year term of confinement for indecent exposure and distribution of controlled dangerous substances. ECF 14-2 at 6; ECF 14-3 at 5. Plaintiff is serving an eight year sentence for "Theft-Felony/CDS." ECF 14-2 at 6. Contrary to Horner's assertion, McDougald is not a verified member of any Security Threat Group. ECF No. 14-3 at 5. Moreover, as of the time of the incident, he had only two rules infractions during his three years of incarceration. ECF 14-2 at 21-22.

Beginning on December 30, 2013, an investigation was conducted by the Internal Investigative Unit ("IIU"). Horner advised the IIU investigator that on December 30, 2013, both he and McDougald went to lunch, returning to their cells around 12:30 p.m. ECF No. 14-3 at 5. Horner went to sleep and McDougald went to recreation, returning to the cell around 3:00 p.m. *Id*. After returning to the cell, McDougald began making sexual comments to Horner. *Id*. An officer came around for count and McDougald instructed Horner to show his ID badge for count, which he did. *Id*. Ultimately, McDougald forcibly raped Horner at knife point. *Id* at 6. At approximately 4:00 p.m. the inmates were instructed to "prepare for chow." *Id*. Horner went to eat, ate as quickly as possible, and then at approximately 6:00 p.m. reported the assault to Sgt. Adekunle Aderinoye. ECF No. 14-3 at 6; ECF No. 14-2 at 7.

Horner was interviewed by Lt. Gray, ECF No. 14-2 at 7, and gave a written statement concerning the assault. *Id*. at 28. He was also interviewed regarding the incident at Mercy Hospital, where he was taken for further treatment and evaluation. ECF No. 14-3 at 5. The records do not indicate that, prior to the assault, Horner feared for his safety or communicated a

---

[4] McDougald's first name also appears as "Braxton." *See*, *e.g.*, ECF 14-3 at 2.

fear for his safety to any prison staff member. To the contrary, Horner indicated that McDougald had threatened him and then an officer came around for count but Horner did not seek the officer's assistance, apparently due to threats by McDougald. ECF 14-3 at 5 (IIU investigation summarizing Horner's statement of the assault).

After Horner reported the assault, he was seen by medical staff at MCI-J, ECF No. 14-2 at 41, and then transported to Mercy Hospital for further medical evaluation. *Id*.  McDougald was also interviewed and gave a statement of the activities of the day, which did not reference any physical incident. *Id*. at 7.  Horner and McDougald were both transferred to administrative segregation pending an investigation of the matter. *Id*. at 25-26, 37-38.

Among other things, on August 25, 2014, laboratory analysis revealed that semen was identified on anal swabs collected from Horner after the incident, and the DNA obtained from the semen matched that of McDougald.  ECF 14-3 at 8.  Based on forensic evidence and Horner's statements, McDougald was charged in the District Court of Maryland for Anne Arundel County with First Degree Sex Offense and related charges. ECF No. 14-3 at 8-9, 12-18.

McDougald is now listed on Horner's known enemy lists. ECF No. 14-2 at 47.  Horner and McDougald are not housed at the same institution. *Id*.  In fact, Horner was moved to administrative segregation on the date of the incident and moved to a new facility on February 20, 2014.  ECF No. 14-2 at 30, 37; ECF No. 1.

Defendants maintain that plaintiff failed to exhaust administrative remedies in that at the time he filed the instant complaint he had not filed any claim with the Inmate Grievance Office. ECF 14-3.

**Standard of Review**

Defendant's motion is styled as a motion to dismiss under Fed. R. Civ. P. 12(b)(6) or, in the alternative, for summary judgment under Fed. R. Civ. P. 56. ECF No. 12. A motion styled in this manner implicates the court's discretion under Rule 12(d) of the Federal Rules of Civil Procedure. *See Kensington Vol. Fire Dept., Inc. v. Montgomery County*, 788 F. Supp. 2d 431, 436-37 (D. Md. 2011). Ordinarily, a court "is not to consider matters outside the pleadings or resolve factual disputes when ruling on a motion to dismiss." *Bosiger v. U.S. Airways*, 510 F.3d 442, 450 (4th Cir. 2007). However, under Rule 12(b)(6), a court, in its discretion, may consider matters outside of the pleadings, pursuant to Rule 12(d). If the court does so, "the motion must be treated as one for summary judgment under Rule 56," and "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d). When the movant expressly captions its motion "in the alternative" as one for summary judgment, and submits matters outside the pleadings for the court's consideration, the parties are deemed to be on notice that conversion under Rule 12(d) may occur; the court "does not have an obligation to notify parties of the obvious." *Laughlin v. Metro. Wash. Airports Auth.*, 149 F.3d 253, 261 (4th Cir. 1998).[5]

A district judge has "complete discretion to determine whether or not to accept the submission of any material beyond the pleadings that is offered in conjunction with a Rule 12(b)(6) motion and rely on it, thereby converting the motion, or to reject it or simply not

---

[5] In contrast, a court may not convert a motion to dismiss to one for summary judgment *sua sponte*, unless it gives notice to the parties that it will do so. *See Laughlin*, 149 F.3d at 261 (stating that a district court "clearly has an obligation to notify parties regarding any court-instituted changes" in the posture of a motion, including conversion under Rule 12(d)); *Finley Lines Joint Protective Bd. Unit 200 v. Norfolk So. Corp.*, 109 F.3d 993, 997 (4th Cir. 1997) ("[A] Rule 12(b)(6) motion to dismiss supported by extraneous materials cannot be regarded as one for summary judgment until the district court acts to convert the motion by indicating that it will not exclude from its consideration of the motion the supporting extraneous materials.").

consider it." 5C WRIGHT & MILLER, FEDERAL PRACTICE & PROCEDURE § 1366, at 159 (3d ed. 2004, 2011 Supp.). This discretion "should be exercised with great caution and attention to the parties' procedural rights." *Id.* at 149. In general, courts are guided by whether consideration of extraneous material "is likely to facilitate the disposition of the action," and "whether discovery prior to the utilization of the summary judgment procedure" is necessary. *Id.* at 165-67.

Ordinarily, summary judgment is inappropriate "where the parties have not had an opportunity for reasonable discovery." *E.I. du Pont de Nemours and co. v. Kolon Industries, Inc.*, 637 F.3d 435, 448-49 (4th Cir. 2011). However, "the party opposing summary judgment 'cannot complain that summary judgment was granted without discovery unless that party has made an attempt to oppose the motion on the grounds that more time was needed for discovery.'" *Harrods Ltd. v. Sixty Internet Domain Names*, 302 F.3d 214, 244 (4th Cir. 2002) (quoting *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 961 (4th Cir. 1996)). To raise adequately the issue that discovery is needed, the non-movant typically must file an affidavit or declaration pursuant to Rule 56(d) (formerly Rule 56(f)), explaining why, "for specified reasons, it cannot present facts essential to justify its opposition," without needed discovery. Fed. R. Civ. P. 56(d); *see Harrods*, 302 F.3d at 244-45 (discussing affidavit requirement of former Rule 56(f)).

"[T]o justify a denial of summary judgment on the grounds that additional discovery is necessary, the facts identified in a Rule 56 affidavit must be 'essential to [the] opposition.'" *Scott v. Nuvell Fin. Servs., LLC*, 789 F. Supp. 2d 637, 641 (D. Md. 2011) (alteration in original) (citation omitted). A non-moving party's Rule 56(d) request for additional discovery is properly denied "where the additional evidence sought for discovery would not have by itself created a genuine issue of material fact sufficient to defeat summary judgment." *Strag v. Bd. of Trs.,*

*Craven Cmty. Coll.*, 55 F.3d 943, 954 (4th Cir. 1995); *see Amirmokri v. Abraham*, 437 F. Supp. 2d 414, 420 (D. Md. 2006), *aff'd*, 266 F. App'x. 274 (4th Cir.), *cert. denied*, 555 U.S. 885 (2008).

If a non-moving party believes that further discovery is necessary before consideration of summary judgment, the party fails to file a Rule 56(d) affidavit at his peril, because "'the failure to file an affidavit . . . is itself sufficient grounds to reject a claim that the opportunity for discovery was inadequate.'" *Harrods,* 302 F.3d at 244 (citations omitted).  But, the non-moving party's failure to file a Rule 56(d) affidavit cannot obligate a court to issue a summary judgment ruling that is obviously premature. Although the Fourth Circuit has placed "'great weight'" on the Rule 56(d) affidavit, and has said that a mere "'reference to Rule 56(f) [now Rule 56(d)] and the need for additional discovery in a memorandum of law in opposition to a motion for summary judgment is not an adequate substitute for [an] affidavit,'" the appellate court has "not always insisted" on a Rule 56(d) affidavit. *Id.* (internal citations omitted). According to the Fourth Circuit, failure to file an affidavit may be excused "if the nonmoving party has adequately informed the district court that the motion is premature and that more discovery is necessary" and the "nonmoving party's objections before the district court 'served as the functional equivalent of an affidavit.'" *Id.* at 244-45 (internal citations omitted). Plaintiff has not filed an affidavit under Rule 56(d).

In light of the foregoing, I am satisfied that it is appropriate to address the defendants' Motion as one for summary judgment.  Plaintiff was notified of his right to oppose the Motion but failed to do so.  And, this approach will facilitate resolution of the case.

Summary judgment is governed by Fed. R. Civ. P. 56(a), which provides, in part:  "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to

7

any material fact and the movant is entitled to judgment as a matter of law." *See Celotex Corp. v. Catrett*, 477 U.S. at 317, 323 (1986). The Supreme Court has clarified that this does not mean that any factual dispute will defeat the motion. "By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc*., 477 U. S. 242, 247-48 (1986) (emphasis in original). A fact is "material" if it "might affect the outcome of the suit under the governing law." *Id*. at 248. There is a genuine issue as to material fact "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id*.; *see Dulaney v. Packaging Corp. of Am.*, 673 F.3d 323, 330 (4th Cir. 2012).

A "party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc*., 346 F.3d 514, 525 (4th Cir. 2003) (alteration in original) (quoting Fed. R. Civ. P. 56(e)), *cert. denied*, 541 U.S. 1042 (2004). The court should "view the evidence in the light most favorable to . . . the nonmovant, and draw all inferences in [his] favor without weighing the evidence or assessing the witness' credibility." *Dennis v. Columbia Colleton Med. Ctr., Inc*., 290 F.3d 639, 644-45 (4th Cir. 2002); *see Matsushita Elec. Indus. Co.*, 475 U.S. at 587; *FDIC v. Cashion*, 720 F.3d 169, 173 (4th Cir. 2013).

The district court's "function" is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249. Moreover, the trial court may not make credibility determinations on summary judgment. *Jacobs v. N.C. Administrative Office of the Courts*, __ F.3d ___, No. 13-2212, slip op. at 12 (4th

Cir. March 12, 2015); *Mercantile Peninsula Bank v. French*, 499 F.3d 345, 352 (4th Cir. 2007); *Black &. Decker Corp. v. United States*, 436 F.3d 431, 442 (4th Cir. 2006); *Dennis*, 290 F.3d at 644-45. Indeed, in the face of conflicting evidence, such as competing affidavits, summary judgment is generally not appropriate, because it is the function of the fact-finder to resolve factual disputes, including matters of witness credibility. *See*, *e.g.*, *Boone v. Stallings*, 583 Fed. App'x. 174 (4th Cir. 2014) (per curiam).

However, to defeat summary judgment, conflicting evidence must give rise to a *genuine* dispute of material fact. *See Anderson*, 477 U.S. at 247-48. If "the evidence is such that a reasonable jury could return a verdict for the nonmoving party," then a dispute of material fact precludes summary judgment. *Id*. at 248; *see Libertarian Party of Va. v. Judd*, 718 F.3d 308, 313 (4th Cir. 2013). On the other hand, summary judgment is appropriate if the evidence "is so one-sided that one party must prevail as a matter of law." *Id.* at 252. And, "the mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Id*.

Because plaintiff is self-represented, his submissions are liberally construed. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007). But, the court must also abide by the "'affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial.'" *Bouchat*, 346 F.3d at 526 (internal quotation marks omitted) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778–79 (4th Cir. 1993), and citing *Celotex Corporation v. Catrett*, 477 U.S. 317, 323–24 (1986)).

**Discussion**

**A. Failure to Exhaust Administrative Remedies**

The court must first examine defendants' assertion that plaintiff's claims should be dismissed due to plaintiff's failure to exhaust available administrative remedies. The Prisoner Litigation Reform Act provides, in pertinent part:

> (a) Applicability of administrative remedies
> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. §1997e.

For purposes of the PLRA, "the term 'prisoner' means any person incarcerated or detained in any facility who is accused of, convicted of, sentenced for, or adjudicated delinquent for, violations of criminal law or the terms and conditions of parole, probation, pretrial release, or diversionary program." 42 U.S.C. § 1997e(h). The phrase "prison conditions" encompasses "all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002).

Notably, administrative exhaustion under § 1997e(a) is not a jurisdictional requirement and does not impose a heightened pleading requirement on the prisoner. Rather, the failure to exhaust administrative remedies is an affirmative defense to be pleaded and proven by defendants. *See Jones v. Bock*, 549 U.S. 199, 215-216 (2007); *Anderson v. XYZ Correctional Health Services, Inc.*, 407 F.2d 674, 682 (4th Cir. 2005).

The Maryland Department of Public Safety and Correctional Services ("DPSCS") has made an administrative remedy procedure available to Maryland State prisoners, within the

meaning of 42 U.S.C. § 1997e(a), for the submission of "grievance[s] against . . . official[s] or employee[s] of the Division of Correction ["DOC"]." Md. Code (2008 Repl. Vol., 2011 Supp.), § 10-206(a) of the Correctional Services Article ("C.S."); *see generally* C.S. §§ 10-201 *et seq*. Regulations promulgated by DPSCS concerning the administrative remedy procedure define a "grievance' to include a "complaint of any individual in the custody of the [DOC] . . . against any officials or employees of the [DOC] . . . arising from the circumstances of custody or confinement." Code of Maryland Regulations ("COMAR") 12.07.01.01B(8).[6]

In the Maryland correctional system, if the particular institution in which an inmate is incarcerated provides an administrative remedy procedure, the inmate must complete the ARP process as a condition precedent to further review of the inmate's grievance. *See* C.S. § 10-206(b); *see also* COMAR 12.07.01.02.D; Division of Correction Directive 185-002 (effective August 27, 2008).

---

[6] Maryland appellate case law indicates that the administrative grievance procedure does not encompass "'every kind of civil matter that could be brought by a DOC inmate.'" *Massey v. Galley*, 392 Md. 634, 646, 898 A.2d 951, 958 (2006) (citation omitted). Rather, it applies only to matters that "relate to or involve a prisoner's 'conditions of confinement.'" *Id*. at 651, 898 A.2d at 960 (citation omitted). Thus, the grievance procedure does not apply to requests for public information under the Maryland Public Information Act, *see id.*, nor does it apply to medical malpractice claims against private medical service providers who treat inmates under contract with the DOC. *See Abramson v. Correctional Med. Servs., Inc.*, 359 Md. 238, 753 A.2d 501 (2000).

Moreover, the administrative grievance procedure does not apply to claims for compensation for disabilities resulting from "personal injury arising out of and in the course of [an inmate's] work for which wages or a stipulated sum of money was paid by a correctional facility," C.S. § 10-304, for which a claim to a different administrative body, the Sundry Claims Board, is the exclusive remedy. *See Dixon v. DPSCS*, 175 Md. App. 384, 927 A.2d 445 (2007). On the other hand, the grievance process does apply to a wide variety of claims that arise out of the conditions of confinement, even if the grievance process cannot provide a comprehensive remedy for such claims, such as tort claims of assault and battery against prison officers. *See McCullough v. Wittner*, 314 Md. 602, 552 A.2d 881 (1989).

Filing a request for administrative remedy with the Warden of the Maryland prison in which one is incarcerated is the first of three steps in the Administrative Remedy Procedure process provided by the Division of Correction to its prisoners. The prisoner must file an ARP with the Warden within thirty days of the date on which the incident occurred, or within thirty days of the date the prisoner first knew of the incident or injury giving rise to the complaint, whichever date is later. COMAR 12.07.01.05A. If this request is denied, the prisoner has thirty calendar days to file an appeal with the Commissioner of Correction. COMAR 12.07.01.05C. If this appeal is denied, the prisoner has thirty days in which to file an appeal to the Inmate Grievance Office. *See* COMAR 12.07.01.03; 12.07.01.05B; *see also* C.S. § 10-206; § 10-210. Complaints are reviewed preliminarily by the IGO. *See* C.S. § 10-207; COMAR 12.07.01.06. If the complaint is determined to be "wholly lacking in merit on its face," the IGO may dismiss it without a hearing. C.S. § 10-207(b)(1); *see* COMAR 12.07.01.07B(4). The order of dismissal constitutes the final decision of the Secretary of DPSCS for purposes of judicial review. C.S. § 10-207(b)(2)(ii). However, if a hearing is deemed necessary by the IGO, the hearing is conducted by an administrative law judge with the Maryland Office of Administrative Hearings. *See* C.J. § 10-208(c); COMAR 12.07.01.07-.08. The conduct of such hearings is governed by statute. C.S. § 10-208.

A decision of the administrative law judge denying all relief to the inmate is considered a final agency determination. However, a decision concluding that the inmate's complaint is wholly or partly meritorious constitutes a recommendation to the Secretary of DPSCS, who must make a final agency determination within fifteen days after receipt of the proposed decision of the administrative law judge. *See* C.S. § 10-209(b)-(c).

In either event, the final agency determination is subject to judicial review in Maryland State court, so long as the claimant has exhausted his/her remedies. *See* C.S. § 10-210. But, an inmate need not seek judicial review in State court in order to satisfy the PLRA's administrative exhaustion requirement. *See*, *e.g.*, *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir.) ("[A] prisoner who uses all administrative options that the state offers need not also pursue judicial review in state court."), *cert. denied*, 537 U.S. 949 (2002).

The PLRA's exhaustion requirement is designed so that prisoners pursue administrative grievances until they receive a final denial of the claims, appealing through all available stages in the administrative process. *Chase v. Peay*, 286 F. Supp. 2d 523, 530 (D. Md. 2003), *aff'd,* 98 Fed. App'x. 253 (4th Cir. 2004); *Gibbs v. Bureau of Prisons*, 986 F. Supp. 941, 943-44 (D. Md. 1997) (dismissing a federal prisoner's lawsuit for failure to exhaust, where plaintiff did not appeal his administrative claim through all four stages of the BOP's grievance process); *see also Booth v. Churner*, 532 U.S. 731, 735 (2001) (affirming dismissal of prisoner's claim for failure to exhaust where he "never sought intermediate or full administrative review after prison authority denied relief"); *Thomas v. Woolum*, 337 F.3d 720, 726 (6th Cir. 2003) (noting that a prisoner must appeal administrative rulings "to the highest possible administrative level"); *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002) (prisoner must follow all administrative steps to meet the exhaustion requirement, but need not seek judicial review).

Administrative remedies must, however, be available to the prisoner, and this court is "obligated to ensure that any defects in administrative exhaustion were not procured from the action or inaction of prison officials." *Aquilar-Avellaveda v. Terrell*, 478 F.3d 1223, 1225 (10th Cir. 2007); *see Kaba v. Stepp*, 458 F.3d 678, 684 (7th Cir. 2006). The Fourth Circuit addressed the meaning of "available" remedies in *Moore v. Bennette*, 517 F. 3d 717, 725 (4th Cir. 2008):

> [A]n administrative remedy is not considered to have been available if a prisoner, through no fault of his own, was prevented from availing himself of it. *See Aquilar-Avellaveda v. Terrell*, 478 F. 3d 1223, 1225 (10th Cir. 2007); *Kaba v. Stepp*, 458 F. 3d 678, 684 (7th Cir. 2006). Conversely, a prisoner does not exhaust all available remedies simply by failing to follow the required steps so that remedies that once were available to him no longer are. *See Woodford v. Ngo*, 548 U.S. 81, 89 (2006). Rather, to be entitled to bring suit in federal court, a prisoner must have utilized all available remedies "in accordance with the applicable procedural rules," so that prison officials have been given an opportunity to address the claims administratively. *Id*. at 87. Having done that, a prisoner has exhausted his available remedies, even if prison employees do not respond. *See Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006).

As indicated, administrative remedies were available to plaintiff. Therefore, as a prisoner, plaintiff is subject to the strict requirements of the exhaustion provisions. *See Porter v. Nussle*, *supra,* 534 U.S. at 528 (no distinction is made with respect to exhaustion requirement between suits alleging unconstitutional conditions and suits alleging unconstitutional conduct). If defendants show that a claim is subject to the ARP process but has not been exhausted, the court may not consider the merits of the claim. *See Jones v. Bock*, 549 U.S. at 220; *see also Woodford v. Ngo*, 548 U.S. 81, 90-91 (2006). Rather, the claim must be dismissed if plaintiff cannot show that he has satisfied the administrative exhaustion requirement under the PLRA, or that defendants have forfeited their right to raise non-exhaustion as a defense. *See Chase v. Peay*, 286 F. Supp. 2d 523, 528 (D. Md. 2003).

Here, plaintiff filed at least one ARP regarding the assault, which was dismissed based on the rationale that classification decisions are not appropriate matters to be reviewed in the ARP process. ECF No. 1-1. Further, the court is familiar with DOC practice to decline an investigation for an ARP where one is already pending before the IIU. *See generally Lynch v. Keionen et al.,* Civil Action No. GLR-13-998 (D. Md.), ECF No. 27 at 8; *Bogues v. McAlpine, et al.*, Civil Action No. CCB-11-463 (D. Md.), ECF No. 23, Ex. 4 at 23; *Oliver v. Harbough, et al.,* Civil Action No. ELH-11-996 (D. Md.), ECF No. 31 at 7-8. In my view, plaintiff's

14

complaint is not subject to dismissal for a failure to exhaust administrative remedies where, as here, the administrative procedure may have been unavailable.

### B. Eighth Amendment Claim

The Eighth Amendment prohibits "unnecessary and wanton infliction of pain" by virtue of its guarantee against cruel and unusual punishment. *Gregg v. Georgia*, 428 U.S. 153, 173 (1976). "Scrutiny under the Eighth Amendment is not limited to those punishments authorized by statute and imposed by a criminal judgment." *De'Lonta v. Angelone*, 330 F. 3d 630, 633 (4th Cir. 2003) (*citing Wilson v. Seiter*, 501 U.S. 294, 297 (1991)).

An inmate has an Eighth Amendment right to be protected from violence perpetrated by other prisoners. *Danser v. Stansberry*, 772 F.3d 340, 346 (4th Cir. 2014); *see Farmer v. Brennan*, 511 U.S. 825, 833-35 (1994). The Supreme Court has said: "Prison conditions may be restrictive and even harsh, but gratuitously allowing the beating or rape of one prisoner by another serves no legitimate penologicial objective, any more than it squares with evolving standards of decency. Being violently assaulted in prison is simply not part of the penalty that criminal offenders pay for their offenses against society." *Farmer* 511 U.S. at 833-34 (citations omitted).

In *Danser*, the Fourth Circuit recently explained, 772 F.3d at 346:

> This constitutional right derives from the Supreme Court's holdings that the treatment an inmate receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment. [*Farmer*, 511 U.S.] at 832-33. Because being assaulted in prison is not "'part of the penalty that criminal offenders pay for their offenses against society,'" *id.* at 834 (quoting *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981)), prison officials are responsible for "protect[ing] prisoners from violence at the hands of other prisoners." *Id* at 833 (citations and internal quotation marks omitted).

Further, as to an inmate's right to be protected from prisoner violence, the *Danser* Court said, *id.* at 346-47:

> An Eighth Amendment claim of this nature requires proof of two elements to establish deprivation of a constitutional right. [*Farmer*, 511 U.S.] at 834; *Brown v. N.C. Dep't of Corr.*, 612 F.3d 720, 723 (4th Cir. 2010). First, a prisoner must establish a serious deprivation of his rights in the form of a "serious or significant physical or emotional injury."[ ] *Brown*, 612 F.3d at 723; *see also De'Lonta v. Johnson*, 708 F.3d 520, 525 (4th Cir. 2013). . . . The second element … requires that a plaintiff show that the prison official allegedly violating the plaintiff's constitutional rights had a "sufficiently culpable state of mind." *Farmer*, 511 U.S. at 834 (citation and internal quotation marks omitted). In this context, the required state of mind that must be established is a "deliberate indifference to inmate health or safety." *Id.* (citations omitted).

Nevertheless, in order to prevail on an Eighth Amendment claim of failure to protect from violence, a plaintiff must establish that the defendants exhibited deliberate or callous indifference to a specific known risk of harm. *See Pressly v. Hutto*, 816 F. 2d 977, 979 (4th Cir. 1987). In other words, a prison "official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837; *see Rich v. Bruce*, 129 F. 3d 336, 339-40 (4th Cir. 1997). However, if a risk is obvious, a prison official "cannot hide behind an excuse that he was unaware of a risk, no matter how obvious." *Brice v. Virginia Beach Correctional Center*, 58 F. 3d 101, 105 (4th Cir. 1995); *see Makdessi v. Fields*, ____ F.3d ____, No. 13-7606, slip op. at 14 (4th Cir. March 12, 2015). And, "[a] prison official's subjective actual knowledge [of a risk] can be proven through circumstantial evidence. . . ." *Makdessi*, slip op. at 15.

Here, it is undisputed that plaintiff's injuries qualify as "significant" under the first element of the *Farmer* test. It is the second element which forms the core issue.

There is simply no indication that any of the named defendants knew or should have known, from plaintiff or anyone else, that plaintiff was in danger of assault by McDougald or any other inmate. The record is devoid of evidence that defendants knew or should have known that McDougald posed any risk of harm. Plaintiff's claim that defendants should be held liable

for the assault because McDougald was a known gang member and/or a violent "lifer" is belied by the record. Contrary to plaintiff's assertions, McDougald was not a known member of BGF, and in fact has not been verified as the member of any prison gang. Nor was he serving a life term. Moreover, McDougald did not have a conviction or adjustment history that would have suggested that he posed a risk of harm.

Even if defendants were somehow negligent in assigning plaintiff and McDougald to the same cell, demonstration of negligence does not suffice to show a claim of deliberate indifference. *See Grayson v. Peed*, 195 F.3d 692, 695 (4th Cir. 1999). Further, an official's failure to ameliorate a significant risk that he "should have perceived but did not" also will not give rise to an Eighth Amendment claim. *Farmer*, 511 U.S. at 838; *Iko*, 535 F.3d at 251 ("It is not enough that the [defendant] should have recognized" a substantial risk of harm").

Plaintiff baldy claims in his complaint that he notified unspecified staff that McDougald posed a risk of harm, there is no evidence that he in fact did so. Plaintiff's statements, given shortly after the assault to investigating officials, do not make any reference to his having alerted staff that he feared for his safety. And, the assault occurred within just a few hours of plaintiff's arrival at the institution. It seems implausible that plaintiff complained immediately upon his arrival at MCI-J.

As the non-moving party, plaintiff must establish the existence of a genuine issue of material fact by presenting evidence on which a factfinder could reasonably rely to find in his favor. Plaintiff has failed to submit any evidence to support his claim, or to create a genuine issue of disputed material facts as to his claim of failure to protect. *See generally Gray v. Spillman*, 925 F.2d 90 (4th Cir. 1991). Although the non-moving party may rely upon a verified

complaint when allegations therein are based on personal knowledge, *see Williams v. Griffin*, 952 F.2d 820, 823 (4th Cir. 1991), plaintiff's complaint is not verified.

The uncontradicted evidence before the court demonstrates that plaintiff suffered a horrible, violent attack at the hands of McDougald, but without warning. Officers responded quickly and reasonably to the attack as soon as they became aware of the assault by providing treatment to plaintiff, assigning plaintiff and McDougald to separate cells, investigating the incident, and referring the incident for criminal prosecution. There is no evidence that defendants knew or should have known of a risk to plaintiff's safety. There is simply no evidence that officers were deliberately indifferent to a significant risk of harm. Because plaintiff has not met his burden to create a dispute of fact as to his Eighth Amendment claim, defendants are entitled to summary judgment in their favor.[7]

A separate Order follows.


April 15, 2015　　　　　　　　　　　　　　_____/s/_____
Date　　　　　　　　　　　　　　　　　　 Ellen L. Hollander
　　　　　　　　　　　　　　　　　　　　 United States District Judge

---

[7] In light of the foregoing, the court need not address defendants' claim that they are entitled to qualified immunity.